**WATKINS & SON PET SUPPLIES,**
**Plaintiff,**

v.

**The IAMS COMPANY, Defendant.**

No. C–3–95–189.

United States District Court,
S.D. Ohio,
Western Division.

March 3, 1999.

John R. Regan, Farmington, Hills, MI, Stephen D. Colbert, Brotherton & Colbert PLLC, Lewisville, TX, for Plaintiff,

Donald Jeffrey Ireland, Mary L. Wiseman, Faruki Gilliam & Ireland, Dayton, OH, John A. Yeager, Willingham & Cote P.C., East Lansing, MI, Nicholas E. Subashi, Law Office of Nicholas E. Subashi, Dayton, OH, for Defendant.

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION TO DISMISS OR TO STRIKE ALL OR A PORTION OF COUNTS I, III, IV, V AND VI OF PLAINTIFF'S FOURTH AMENDED COMPLAINT (DOC. # 90)

RICE, Chief Judge.

This litigation arises out of the termination of a long-term business relationship. Plaintiff Watkins and Son Pet Supplies ("Watkins") has been a distributor of dog and cat food and pet products for more

than thirty years.[1] Since the late 1970's, Plaintiff has contracted with Defendant Iams Company ("Iams") to be a distributor of Iams' dog and cat products. Beginning in 1985, Iams began to require that Watkins execute written agreements. Each of those agreements was for a term of one year, and none included a renewal clause. Plaintiff alleges that an Iams representative informed it that the agreement was a formality and that Watkins would be able to distribute Iams products so long as it paid its bills and did a good job distributing products. In November, 1993, Watkins was notified that it would not be offered a renewal of its agreement with Iams for the distribution of Iams' dog and cat products for 1994, thus terminating the manufacturer-distributor relationship.

Following the termination of their relationship, Watkins initiated the instant lawsuit. To date, Watkins has filed five Complaints. Plaintiff's Second Amended Complaint (Doc. # 21) contained eleven causes of actions, to wit: 1) a claim against Iams under the Michigan Franchise Investment Law, Mich. Comp. Laws § 445.1501 et seq. ("MFIL"); 2) a claim against Iams and Wolverton,[2] alleging that Iams gave allowances and discounts to Wolverton, in violation of § 2(d) and (e) of the Clayton Act, as amended by the Robinson–Patman Act ("Robinson Patman Act"); 3) a claim of exclusive dealing against Iams; 4) a claim against Iams, alleging that it has given illegal discounts

to retailers, in violation of § 3 of the Clayton Act; 5) a claim against Iams and Wolverton, alleging that they engaged in an illegal tying arrangement and attempted to monopolize the market for specialty dog and cat food, in violation of §§ 1 and 2 of the Sherman Act; 6) a state law claim of tortious interference and interference with prospective contractual relations against Iams and Wolverton; 7) a state law claim of fraud against Iams; 8) a state law claim of breach of contract; 9) a state law claim of fraud in the inducement against Iams; 10) a state law claim of promissory estoppel against Iams; and 11) a state law claim of breach of duty of good faith and fair dealing against Iams. On March 15, 1996,[3] this Court issued a decision, dismissing all the counts alleged against Co–Defendant Wolverton, Inc., and dismissing Counts One, Three, Five, Seven, and Nine against Iams.[4] The Court granted Plaintiff leave to replead Counts Seven (Fraud) and Nine (Fraud in the Inducement).

On June 1, 1998, Plaintiff filed its Fourth Amended Complaint.[5] In that Complaint, Watkins again alleged eleven causes of action, to wit: 1) violations of the MFIL and the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 et seq. ("MCPA"); 2) a state law claim of tortious interference with contractual and prospective contractual relations; 3) illegal discounts, in violation of the Robinson–Patman Act, 15 U.S.C. § 13; 4) exclusive

---

1. The Court's recitation of the facts and circumstances leading up to this litigation is taken from Plaintiff's Fourth Amended Complaint (Doc. # 79).

2. Wolverton, Inc., an original co-Defendant in this lawsuit, is a distributor of pet food products.

3. An expanded opinion, setting forth the reasoning and citations of authority in support of this Decision, was filed on March 27, 1998 (Doc. # 67).

4. The Court also granted leave to Iams to file a motion for summary judgment as to Counts Six, Eight, Ten, and Eleven. Iams filed such

a motion on April 13, 1998 (Doc. # 68), and renewed the Motion (Doc. # 86) on June 18, 1998, following the filing of Plaintiff's Fourth Amended Complaint. Iams' original Motion for Summary Judgment has been overruled as moot. (Doc. # 112) The Court will address Iams' Renewed Motion for Summary Judgment in a separate opinion.

5. Watkins' Fourth Amended Complaint is incorrectly titled Third Amended Complaint. (Parenthetically, the Third Amended Complaint is also incorrectly titled Second Amended Complaint.) Although Iams has chosen to refer to the Fourth Amended Complaint as the Third Amended Complaint, this Court will refer to it as the Fourth such.

dealing in violation of Section 3 of the Clayton Act; 5) commercial bribery in violation of the Robinson–Patman Act;[6] 6) an illegal tying arrangement and attempt to monopolize in violation of §§ 1 and 2 of the Sherman Act; 7) a state law claim of fraud; 8) a state law claim of breach of contract; 9) a state law claim of fraud in the inducement; 10) a state law claim of promissory estoppel; and 11) a state law claim of breach of duty of good faith and fair dealing. On June 30, 1998, Iams filed the instant motion to dismiss or strike Counts One, Four, and Six, and to dismiss or strike portions of Counts Three and Five of the Fourth Amended Complaint, pursuant to Fed.R.Civ.P. 12(b)(6) and 12(f). (Doc. # 90) As discussed below, Defendant's Motion is Sustained in Part and Overruled in Part.

## I. Standards for Motion to Dismiss and Motion to Strike

■ The standard for ruling upon motions to dismiss under Fed.R.Civ.P. 12(b)(6) has been set forth in this Court's previous decision (Doc. # 67), and is now repeated. When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.)(citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Barrett v. Harrington,* 130 F.3d 246 (6th Cir.1997), *cert. denied,* 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998)("In considering a motion to dismiss for failure to state a claim, the Court is required to take as true all factual alle-

gations in the complaint."); *Lamb v. Phillip Morris, Inc.,* 915 F.2d 1024, 1025 (6th Cir.1990), *cert. denied,* 498 U.S. 1086, 111 S.Ct. 961, 112 L.Ed.2d 1048 (1991). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ Rule 12(f) provides, "[u]pon motion made by a party . . ., the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.Civ.P. 12(f). Because striking a portion of a pleading is a drastic remedy, such motions are generally viewed with disfavor and are rarely granted. *AT&T Global Information Solutions Co. v. Union Tank Car Co.,* C2–94–876, 1997 WL 382101 (S.D.Ohio Mar.31, 1997)(Holschuh, J.), citing, *Brown and Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir.1953); *Morrow v. South,* 540 F.Supp. 1104, 1111 (S.D.Ohio 1982)(Rice, J.)("Motions under Rule 12(f) are not favored, and should not be granted unless it is apparent that the matter has no possible relation to the controversy."). "The application of this rule, which is in the discretion of the trial judge, should be resorted to only where the pleading contains such allegations that are obviously false and clearly injurious to a party to the action because of the kind of language used or the allegations are unmistakably unrelated to the subject matter." *Pessin v. Keeneland Ass'n,* 45 F.R.D. 10, 13 (E.D.Ky.1968).

**6.** As discussed, *infra,* Plaintiff's Complaint is unclear regarding the statute under which

this cause of action is being asserted.

## II. *Michigan Franchise Investment Law Claim (Count One)*

Iams requests that all references to the Michigan Franchise Investment Law and references identifying Watkins as a franchisee be stricken from Watkins' Fourth Amended Complaint. Defendant argues that Judge Cohn of the United States District Court for the Eastern District of Michigan and this Court have both ruled, as a matter of law, that Watkins is not a franchisee, given that it did not pay franchise fees to Iams. In particular, this Court, based on the Michigan court's ruling, dismissed Watkins' cause of action under the MFIL, using the law-of-the-case doctrine. Iams contends that because this Court has previously dismissed Plaintiff's MFIL claim, all references to it are immaterial and prejudicial.

In response to Iams' Motion, Watkins devotes significant energy arguing that the terms of its Distributorship Agreement are sufficient to create a franchise relationship. Plaintiff argues that Judge Cohn, in determining that Watkins is not a franchisee, relied upon a Seventh Circuit opinion, *Wright–Moore Corp. v. Ricoh Corp.*, 908 F.2d 128 (7th Cir.1990), concerning "indirect franchise fees" under Indiana law. Using that case as persuasive authority, Judge Cohn found that Watkins did not constitute a franchisee, because it did not pay any franchise fees. Plaintiff states that the Seventh Circuit has rendered a more recent opinion, *To–Am Equipment Co, Inc. v. Mitsubishi Caterpillar Forklift America, Inc.*, 152 F.3d 658 (7th Cir. 1998),[7] in which that court found that a variety of actions required of a dealership by the supplier could constitute indirect franchise fees under the Illinois Franchise Disclosure Act.[8] Watkins asserts that the MFIL is analogous to the Illinois statute,

and the Michigan statute should be similarly interpreted. Following *To–Am*, Plaintiff argues, Watkins should be considered within the purview of the MFIL. In its reply memoranda, Iams argues that the law-of-the-case doctrine bars the claim and that none of the exceptions to that doctrine applies.

In this Court's expanded opinion explaining the dismissal of Plaintiff's claim under the MFIL (Doc. # 67), the Court relied on the familiar law-of-the-case doctrine. Simply stated, that doctrine states that a "decision on an issue made by a court at one stage of the case should be given effect in successive stages of the same litigation." *United States v. Todd*, 920 F.2d 399 (6th Cir.1990), *citing, Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Applied to coordinate courts, the doctrine is a discretionary tool available to a court in order to promote judicial efficiency. *Id.* at 403. As stated previously, the Sixth Circuit has identified three extraordinary circumstances in which a coordinate court would be justified in reconsidering a previously decided issue, to wit: 1) there is substantially different evidence, 2) controlling authority has since made a contrary decision of law applicable to the issues, or 3) the decision was clearly erroneous and would work a substantial hardship. *Coal Resources, Inc. v. Gulf & Western Indus.*, 865 F.2d 761, 767 (6th Cir.1989). In its March 27, 1998, decision, this Court found that none of the exceptions applied. Accordingly, the Court granted Iams' motion to dismiss Plaintiff's claim under the MFIL.[9]

Although Watkins has not filed a motion to reconsider the March 15, 1996, decision with the Court, the Court con-

---

**7.** Plaintiff incorrectly attributes the decision to Judge Posner. The decision was written by Circuit Judge Diane P. Wood.

**8.** The *To–Am* decision was rendered subsequent to the issuance of this Court's expanded opinion of March 27, 1998.

**9.** The Court did not grant Plaintiff leave to replead this cause of action. Despite this fact, Watkins reasserted its claim under the MFIL in its Fourth Amended Complaint.

cludes the circumstances of this case warrant revisiting the issue of whether Watkins is a "franchisee" for purposes of the MFIL. Neither Judge Cohn nor this Court has found any Michigan or Sixth Circuit authority interpreting "indirect franchise fees." Because Judge Cohn's decision relied upon *Wright–Moore* alone in determining that Watkins is not a franchisee, the Court concludes it is appropriate to consider whether *To–Am* makes his prior decision clearly erroneous. As discussed below, upon reviewing *To–Am* and other relevant law, this Court concludes that Judge Cohn's decision remains well-founded and, therefore, that Watkins is not a franchisee as defined by the MFIL.

Under Michigan law, a franchise is defined as:

> a contract or agreement, either express or implied, whether oral or written, between 2 or more persons to which all of the following apply:
>
> (a) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor.
>
> (b) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate.
>
> (c) The franchisee is required to pay, directly or indirectly, a franchise fee.

Mich. Comp. Laws § 445.1502(3).[10] Initially, the Court notes that the agreement signed by Watkins and Iams does not, on its face, purport to be a franchise agreement. *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 989 F.Supp. 838, 842 (E.D.Mich.1997)("First, the word "franchise" does not appear anywhere in the parties' agreement. While not dispositive, it is clearly probative of what type of agreement was reached."); *James v. Whirlpool Corp.*, 806 F.Supp. 835 (E.D.Mo.1992)(same)(applying MFIL). However, because this is not dispositive, *id.*, the Court will determine whether *To–Am* makes Judge Cohn's decision that Watkins did not pay franchise fees clearly erroneous.

In *Wright–Moore*, the Seventh Circuit was faced with the issue of whether the district court had properly determined that the plaintiff was a franchisee under

---

10. Both Indiana and Illinois law contain, essentially, the same requirements. Indiana law defines a franchise as a contract by which:

> (1) a franchisee is granted the right to engage in the business of dispensing goods or services, under a marketing plan or system prescribed in substantial part by a franchisor;
>
> (2) the operation of the franchisee's business pursuant to such a plan is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and
>
> (3) the person granted the right to engage in this business is required to pay a franchise fee.

Ind.Code § 23–2–2.5–1(a). The Illinois' Franchise Disclosure Act of 1987 defines a franchise as:

> a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
>
> (a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and
>
> (b) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and
>
> (c) the person granted the right to engage in such business is required to pay, directly or indirectly, a franchise fee of $500 or more; . . . .

815 Ill. Comp. Stat. 705/3 § 3(1).

Indiana law. Plaintiff had argued that it had paid indirect fees by way of payments for training, payments to maintain excess inventory, and ordinary business expenses. As with the MFIL, there were no published Indiana cases considering indirect franchise fees, and the statute merely stated that purchases at bona fide wholesale prices are not indirect fees. The court, therefore, studied similar laws of other states and the purposes behind those laws. Looking at Wisconsin's statute, the Seventh Circuit noted that "[t]he reason for the franchise fee requirement ... is to insure that only those entities that have made a firm-specific investment are protected under the franchise laws; where there is no investment, there is no fear of inequality of bargaining power." 908 F.2d at 135–36. The *Wright–Moore* court, therefore, concluded that plaintiff must show evidence of unrecoverable investment in defendant's distributorship.

Turning to the alleged fees, the *Wright–Moore* court, after looking at Illinois and Minnesota law, concluded that excess inventory may constitute a franchise fee if the quantity is so unreasonably large that it is non-liquid. It also concluded that costs incurred in training might also constitute indirect franchise fees. However, due to the bona fide wholesale price exception, ordinary business expenses would not constitute franchise fees unless they were unrecoverable investments. The court further found this conclusion was supported by the statutory definition of franchise fee, which stated that it was a fee paid for the *right* to do business, not as fees paid during the course of business. *Id.* at 136 (emphasis in original)(citing to Indiana statute and *RJM Sales & Marketing, Inc. v. Banfi Products Corp.*, 546 F.Supp. 1368 (D.Minn.1982)). Noting that these matters are "very fact specific and call[ ] for judgment based on the individual circumstances of each case," the Seventh Circuit concluded that summary judgment was not appropriate on the issue of whether the plaintiff was a franchisee.

In *To–Am*, the Seventh Circuit was again faced with whether the plaintiff constituted a franchisee, this time under the Illinois Franchise Disclosure Act. The defendant had argued that the requirement that plaintiff maintain an adequate supply of sales and service publications was not an indirect franchise fee. The defendant had proffered, based on *Wright–Moore*, that ordinary business expenses could not qualify as franchise fees unless they were "unrecoverable expenses." 152 F.3d at 663. The court stated, however, that the differences in language between the Illinois and Indiana statutes affected its analysis. The court noted that the Illinois statute provided a narrower "bona fide wholesale price" exception by using the phrase "where there is an *established market* at a bona fide wholesale price." Furthermore, the *To–Am* court noted that Indiana, unlike Illinois, had no administrative regulations broadly defining indirect franchise fees. Thus, the *To–Am* court concluded that Illinois law did not require that franchise fees be "unrecoverable investments."

Under the MFIL, the term "franchise fee" means "a fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business under a franchise agreement, including but not limited to payments for goods and services." Mich. Comp. Laws § 445.1903(1). Franchise fees exclude, *inter alia*, "[t]he purchase or agreement to purchase goods, equipment, or fixtures directly or on consignment at a bona fide wholesale price." *Id.* § 445.1903(1)(a). Watkins argues that the Michigan statute is analogous to the Illinois franchise law, as interpreted by the *To–Am* court, rather than the Indiana law, as interpreted by the *Wright–Moore* court.

The Indiana and Michigan statutory definitions of "franchise fees" are virtually identical. Both state that franchise fees do not include "the purchase or agreement to purchase goods ... at a bona fide wholesale price." Although also similar,

the Illinois statute contains the narrower exclusion, requiring an established market. 815 Ill. Comp. Stat. 705/3(14)(c). In this regard, the Michigan statute is more analogous to the Indiana statute. Because the language of Indiana's "bona fide wholesale price" exception was a basis for the Seventh Circuit concluding that ordinary business expenses may not constitute indirect franchise fees, the identical language in Michigan's statute could reasonably be interpreted to exclude ordinary business expenses as franchise fees. *To–Am*, therefore, has no effect on the correctness of Judge Cohn's reasoning that ordinary business expenses are not franchise fees under the MFIL.

Watkins emphasizes that Michigan, like Illinois, has administrative regulations governing franchise fees and, therefore, the MFIL is more similar to the Illinois statute. As noted by the *To–Am* court, Illinois' administrative code defines an indirect franchise fee in broad strokes. It provides, in pertinent part, that "any payment in excess of $500 that is required to be paid by a franchisee to the franchisor or an affiliate of a franchisor constitutes a franchise fee, unless specifically excluded by [the statute, 815 Ill. Comp. Stat. 705/3(14) ]". Ill. Admin. Code. tit. 14, § 200.105. The Michigan regulations are not as sweeping, and do not create such a presumption that any payment to the franchisor, unless excluded by statute, is a franchise fee.[11] The Michigan and Illinois regulations are similar, however, in their treatment of payments for services. Both state that payments for services are presumed to be in part for the right to engage in the franchise business. Mich. Admin. Code r. 445.101(2)(c); Ill. Admin. Code tit. 14, § 200.106(c). They further state that training programs are services. *Id.* Although both Michigan and Illinois have administrative regulations, the language and scope of the two are not so close that this Court would conclude that Michigan's statute should be interpreted similarly to that of Illinois rather than to that of Indiana. Accordingly, this Court concludes that Judge Cohn's decision is not rendered clearly erroneous by the Seventh Circuit's decision in *To–Am*.

Because the Court concludes that Judge Cohn's decision is not clearly erroneous, it reaffirms its previous decision dismissing Plaintiff's claim under the MFIL. All references to Plaintiff as a franchisee and to that statute are hereby stricken.

### III. *Michigan Consumer Protection Act ("Little FTC") Claim (Count One)*

Count One also contains allegations that Iams has violated the Michigan Consumer Protection Act ("Little FTC" or "MCPA"), Mich. Comp. Laws § 445.901 *et seq.* Iams seeks dismissal of this claim, contending that Watkins lacks standing to sue under the statute, because it is not a consumer and does not seek redress for alleged wrongs directed at consumers. Watkins has distinguished the cases cited by Defendant, stating that those companies lacked standing because they did not supply goods, property or services for personal, family or household purposes. Plaintiff argues that nothing in the MCPA prohibits

---

**11.** The Michigan administrative regulations provide that franchise fees may include:

(a) Present payments, deferred payments, and royalty payments required of the franchisee by the franchisor arising from sales of goods or services offered by the franchisee or its agents or affiliates, or payments as a condition to maintaining the franchise relationship other than payments for goods at a bona fide wholesale price . . .

(c) Payments for services. These payments are presumed to be in part for the right granted to the franchisee to engage in the franchise business. Ideas, instruction, training, and other programs are services and not goods, irrespective of whether offered, distributed, or communicated by word of mouth, through instructions or lectures, in written or printed form, by record or tape recording, or any combination thereof . . .

(e) Minimum purchase or minimum inventory requirements other than at a bona fide wholesale price for which there is a well-established market in this state.

Mich. Admin. Code r. 445.101(2).

"upstream" distributors who have been subject of violations of the Act, in addition to "downstream" consumers, from seeking redress from the courts.

■ The Michigan Consumer Protection Act prohibits unlawful acts in the conduct of "trade or commerce." The term "trade or commerce" is defined as the "conduct of business providing goods, property, or service primarily for personal, family, or household purposes." Mich. Comp. Laws § 445.902(d). The phrase "personal, family, or household purposes" has been interpreted to modify "goods, property, or service." *Noggles v. Battle Creek Wrecking, Inc.*, 153 Mich.App. 363, 395 N.W.2d 322 (1986); *Robertson v. State Farm Fire and Casualty Co.*, 890 F.Supp. 671 (E.D.Mich. 1995). As such, the MCPA was intended to protect consumer, not commercial, transactions. *National Union Fire Ins. Co. v. Arioli*, 941 F.Supp. 646 (E.D.Mich.1996)(investment into limited partnership was not for "personal, family, or household purposes and, therefore, not covered by the MCPA)." Section 11 of the MCPA creates a cause of action for an aggrieved "person." Mich. Comp. Laws § 445.911. The term "person" is defined as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity." *Id.* § 445.902(c).

As demonstrated by the parties' arguments, the courts which have addressed whether a company (as opposed to a consumer) may bring an action under the MCPA are divided in their opinions. A few courts have stated that a business entity may bring a cause of action under the MCPA. In *Michaels v. Amway Corp.*, the Court of Appeals of Michigan concluded that high-level distributors in a corporation's pyramid sales structure had a justiciable claim against the company, under section 3 of the MCPA, for unfair and deceptive commercial practices. 206 Mich. App. 644, 522 N.W.2d 703 (1994). More notably, in a lengthy opinion, Judge Cohn concluded that a business competitor had a right of action under the MCPA. *John Labatt Ltd. v. Molson Breweries*, 853 F.Supp. 965 (E.D.Mich.1994). In *Labatt*, the plaintiff, a company in the business of importing, marketing, and selling beer, sued a competitor under the MCPA for unfair trade practices.[12] The *Labatt* court distinguished a number of cases which stated that only consumers may bring a cause of action under the MCPA, noting that those cases turned on whether the transaction was a consumer transaction, not on the relationship between the parties. 853 F.Supp. at 968–69 (distinguishing, *e.g., Wynn* and *Noggles, infra* ). The court further cited several cases in which competitors were permitted to assert claims under the MCPA when the plaintiffs had been injured by false advertisements or misleading representations by the defendants. 853 F.Supp. at 969–70, *citing Janda v. Riley–Meggs Indus., Inc.*, 764 F.Supp. 1223 (E.D.Mich.1991) and *Nintendo of America v. Elcon Indus., Inc.*, 564 F.Supp. 937 (E.D.Mich.1982). Finally, the *Labatt* court reasoned that "[a]llowing a competitor to bring suit under a statute designed ultimately to protect the interests of consumers is not a novel approach to enforcement, and is routine, for instance, in actions under the Lanham Act." *Id.* at 970. The court, therefore, denied the plaintiff's motion to dismiss the competitor's claim under the MCPA for lack of standing.

The majority of cases have reached a contrary opinion. These courts have concluded that the MCPA does not create a private right of action for a business enti-

---

**12.** Specifically, Labatt alleged that Miller's actions were likely to confuse, mislead, or deceive the public as to the origin, sponsorship, or approval of Miller's goods, and that they constituted misleading descriptions and representations of fact regarding the nature, characteristics, and qualities of Miller's and Labatt's products. Labatt further asserted that Miller intended that purchasers rely on its confusing misrepresentations. 853 F.Supp. at 967, n. 6.

ty. *Beaver v. Figgie Internat'l Corp.*, No. 87–1362, 1988 WL 64710 at *4 (6th Cir. June 24, 1988)(MCPA does not apply to transactions between two merchants); *Amway Corp. v. Dyson,*1997 U.S. Dist. LEXIS 13735 (Sept. 24, 1997); *Wynn Oil Co. v. American Way Serv. Corp.*, 736 F.Supp. 746 (E.D.Mich.1990), *aff'd in part and rev'd in part on other grounds*, 943 F.2d 595 (6th Cir.1991); *Robertson*, 890 F.Supp. 671. For example, in *Robertson*, the plaintiffs brought suit against their insurer, under the MCPA, when the insurer refused to pay for losses incurred by the plaintiffs when the barn on their dairy farm collapsed. After first concluding that the insurer was not able to invoke the MCPA's statutory exemptions, the court dismissed the plaintiffs' claim, because the acts complained of did not involve the sale of "goods, property, or service primarily for personal, family or household purposes." In doing so, the court, in *dicta*, criticized *Labatt*, stating that even if a business entity has standing, it would still be required to show that the goods or property bought (or services procured) were "primarily for personal, family, or household purposes." 890 F.Supp. at 678–79. The court further criticized the *Labatt* court's comparison to the Lanham Act, noting that the Michigan Trademark Protection Act allows competitors to bring suits for the same kinds of practices as addressed by the Lanham Act.

■ As does the majority of the courts addressing the issue, this Court concludes that Watkins may not assert a cause of action under the MCPA. The MCPA is intended to provide a remedy to consumers of goods for personal, family, or household purposes. As stated by the *Robertson* court,

> [I]t is highly unlikely that a competitor would be purchasing goods for "personal, family, or household purposes." This may explain why courts have held that the MCPA does not apply to businesses; it would be rare indeed (if even possible)

for a corporation to purchase goods for "person, family, or household purposes." 890 F.Supp. at 679. A corporation is unlikely to suffer the type of injury that the MCPA is intended to remedy.

Although one court has concluded that a corporation may bring a cause of action under the MCPA because the statute provides that "persons" includes corporations and "persons" may bring a cause of action under section 11, *Catallo Assocs., Inc. v. MacDonald & Goren*, 186 Mich.App. 571, 465 N.W.2d 28 (1990), the inclusion of "corporation" in the definition of "persons" does not require that this Court conclude that Watkins may bring a claim. Although the MCPA uses the term "person" to describe both potential plaintiffs and defendants, the plaintiff must still suffer an injury as contemplated by the statute, namely an injury from a consumer transaction. Watkins has failed to allege an injury to consumers as contemplated by the MCPA. In Count One, Plaintiff alleges that Iams violated the MCPA by terminating its relationship with Watkins. There are no factual allegations to support the contention that Iams' actions both constitute an unfair trade practice, as defined by section 3 of the MCPA, Mich. Comp. Laws § 445.903(1)(a)-(cc), and have injured consumers. Accordingly, Defendant's Motion to Dismiss Plaintiff's claim under the Michigan Consumer Protection Act is Sustained.

■ To the extent that Watkins asserts a cause of action under the Ohio Consumer Sales Practices Act, that claim is also dismissed. That statute requires that a consumer be an "individual." The term "individual" has been interpreted to mean a natural person. *Toledo Metro Federal Credit Union v. Ted Papenhagen Oldsmobile, Inc.*, 56 Ohio App.2d 218, 381 N.E.2d 1337 (1978); *Kraft, Inc. v. Herold Salads, Inc.*, No. 51265, 1986 WL 12862 at *2 (Cuyahoga Cty. Nov. 13, 1986)(adopting interpretation of "individual" in *Toledo Metro*). Because Watkins is not a natural person, it may not assert a cause of action

under the Ohio Consumer Sales Practices Act.

Accordingly, Defendant's Motion to Dismiss Count One in its entirety is Sustained.

### IV. *Robinson–Patman Act: Illegal Discounts (Count Three)*

Iams requests dismissal of that portion of Count Three which alleges an "overall scheme" by Iams and Hill's Science Diet "to coerce ... distributors into not taking on products competitive to Iams and Hills." Iams asserts that this allegation, located in paragraph 25 of the Fourth Amended Complaint, constitutes new factual allegations and raises a new cause of action. Defendant, therefore, asserts that this new claim has been raised after the expiration of the statute of limitations. Watkins did not respond to Iams' arguments with respect to Count Three.

 Section 4b of the Clayton Act provides the statute of limitations for antitrust actions. It states, in pertinent part: "Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. A cause of action accrues and the period provided by the statute of limitations begins to run when the defendant's violation injures the plaintiff's business. *Martinez v. Western Ohio Health Care Corp.*, 872 F.Supp. 469 (S.D.Ohio 1994)(Rice, J.); *Peck v. General Motors Corp.*, 894 F.2d 844, 848 (6th Cir. 1990).

Although Watkins appears to attempt to "beef up" its claim of illegal discounts with the addition of paragraph 25, nothing else in Plaintiff's Fourth Amended Complaint suggests that Plaintiff has attempted to raise an additional cause of action under the Robinson–Patman Act. In paragraph 29, Plaintiff states:

> The foregoing acts and practices constitute a violation of Section 2 of the Clayton Act, as amended by the Robinson–Patman Act, 15 U.S.C. § 13, in that the sale by IAMS of its dog and cat food to favored distributors under such terms and conditions constitutes an unlawful discrimination in promotional allowances and services between competing purchasers involving sales in interstate commerce of commodities of like grade and quality, the effect of which was, and is, substantially to lessen competition among distributors of IAMS pet food, and to injure, destroy or prevent competition among IAMS distributors and between IAMS distributors and other distributors of dog and cat food.

4th A. Compl. ¶ 29. Reading this paragraph in conjunction with Plaintiff's other allegations concerning Count Three, the crux of that Count continues to be that Iams provided allowances and services to favored distributors, causing Plaintiff to lose customers because those favored distributors could sell Iams' products at a lower price than it could. Although Plaintiff does not specify, in its Fourth Amended Complaint, the subsection of Section 2 upon which it relies, these allegations appear to reassert violations of sections 2(d) [13] and 2(e) [14] (as were asserted in the

---

**13.** Section 2(d) of the Robinson–Patman Act provides:

> It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or

offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.

> 15 U.S.C. § 13(d).

**14.** Section 2(e) of the Robinson–Patman Act provides:

> It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without

Second Amended Complaint) by asserting that Iams' actions constitute unlawful discrimination between competing purchasers.

 After reading the other allegations in Count Three, paragraph 25 appears anomalous. In it, Plaintiff alleges:

25. The distributor base was derived from pet product distributors who sold hard goods to pet professionals prior to the introduction of "specialty" pet foods. Of the distributors who were willing to sell pet food, IAMS and Hills Science Diet Pet Foods, obtained those by 1985 and initiated an overall scheme sometime in late 1985 or early 1986 to coerce these distributors into not taking on products competitive to IAMS and Hills. IAMS and Hills have been successful in preventing competing manufacturers from getting substantial distribution in the national market. Clayton Mathile, past President and current Chairman of the Board of IAMS, IAMS and Hills conspired to exclude competition in the "specialty" market in order to allow IAMS to raise or maintain price.

4th A. Compl. ¶ 25. The allegations in paragraph 25 suggest that Watkins has attempted to raise three other cause of actions. *First*, that paragraph suggests a claim for an illegal attempt to monopolize, in violation of Section 2 of the Sherman Act. However, because Plaintiff includes a cause of action under Section 2 of that statute in Count Six, the Court does not read Count Three of the Fourth Amended Complaint as so doing. *Second*, Plaintiff may be trying to assert a conspiracy to fix prices, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Again, Plaintiff has attempted to set forth claims under Section 1 of the Sherman Act in Count Six. Count Six, however, did not include a claim for conspiracy to fix prices. Accordingly, to the extent that Plaintiff attempts to

assert such a claim in Count Three, that claim constitutes new allegations. Plaintiff, however, has failed to assert these allegations within the four year statute of limitations, and Plaintiff has not alleged a continuing conspiracy. Accordingly, to the extent raised, Plaintiff's claim of a conspiracy to fix prices, asserted in Count Three of the Fourth Amended Complaint, is dismissed.

 Finally, Plaintiff may have attempted to raise a claim under Section 2(a) of the Robinson–Patman Act, for price discrimination. In it Decision and Entry dismissing Watkins' claim of illegal discounts against Wolverton (Doc. # 67), this Court noted that Plaintiff had not included a claim of price discrimination, in violation of Section 2(a). That section provides, in pertinent part:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them....

15 U.S.C. § 13(a). To the extent that paragraph 25 attempts to assert a claim under Section 2(a), Iams' Motion to Dismiss has merit. To assert a claim under

processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering

for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

15 U.S.C. § 13(e).

2(a), Plaintiff had to allege four elements: 1) that Iams' sales to competing distributors were made in interstate commerce, 2) that the products sold to them were of the same grade and quality as that sold to Watkins, 3) that Iams discriminated in price between Watkins and other distributors, and 4) that the discrimination had a prohibited effect on competition, *i.e.* to lessen it substantially. *See Texaco, Inc. v. Hasbrouck,* 496 U.S. 543, 556, 110 S.Ct. 2535, 110 L.Ed.2d 492 (1990). Although Watkins mentions control over price in paragraph 25, Plaintiff has not alleged that Iams discriminated in price between it and other distributors. Accordingly, any cause of action attempted to be asserted under Section 2(a) is hereby dismissed, as failing to state a claim upon which relief can be granted.

Accordingly, to the extent that Plaintiff has attempted to raise a claim for conspiracy to fix prices or a claim under Section 2(a), Defendant's Motion to Dismiss [a portion of Count Three] is Sustained.

## V. *Clayton Act: Exclusive Dealing (Count Four)*

In Count Four of its Fourth Amended Complaint, Plaintiff alleges that Iams and Hills Science Diet Pet Foods and their distributors have agreed to monopolize the "specialty" pet food market by means of the distributors refusing to carry competitive brands. Plaintiff asserts that Iams coerced it into ridding itself of competitive lines of pet food, fraudulently misrepresenting to Watkins that if it did so, Watkins would have a long-term relationship with Iams, as long as it met its sales requirements. Plaintiff further alleges that the effect of Iams' distributorship arrangement results in foreclosing distribution opportunities for its competitors in the premium pet food market, in violation of Section 3 of the Clayton Act.

 As stated in a prior decision (Doc. # 67), Section 3 of the Clayton Act provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

15 U.S.C. § 14. In order to make out a claim of exclusive dealing in violation of section 3, the plaintiff must allege two elements, to wit: 1) an exclusive dealing agreement, and 2) the effect of which has been or will be to foreclose competition in a substantial share of a line of commerce. *Perington Wholesale, Inc. v. Burger King Corp.,* 631 F.2d 1369, 1375 (10th Cir.1979); *see also Barnosky Oils, Inc. v. Union Oil Co. of Cal.,* 665 F.2d 74, 85–87 (6th Cir. 1981). This Court previously dismissed Watkins' claim of exclusive dealing, because the Second Amended Complaint failed to allege that the effect of Plaintiffs' exclusive dealing arrangement with Iams might be to lessen substantially competition in the market for premium pet foods sold in specialty stores.

As with Count Three, Iams now requests dismissal of the exclusive dealing claim on the grounds that it is barred by the statute of limitations. Iams argues that Watkins has added the words "and Hills" to allege an Iams–Hills conspiracy.

Defendant asserts that because the Court has found Plaintiff's claim of exclusive dealing defective without additional allegations, the new allegations are raised outside of the statute of limitations. In response, Plaintiff argues that no new claims have been brought, and that the allegations all relate to the conduct, transaction or occurrence set forth or attempted to be set forth in its original pleading. Watkins states that it has the right to correct misnomers, and that the new allegations relate back to the original pleading.

As stated above, Section 4b of the Clayton Act establishes a four-year statute of limitations for antitrust actions. Fed. R.Civ.P. 15(c)(2) allows amendment of a pleading, such that the date of filing the amended pleading relates back to the date of the original pleading, "when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," even though the statute of limitations might have run on a new claim.

> The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide. 3 J. Moore, Moore's Federal Practice P 15.15[3], p. 15–194 (1984). Although the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 150 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Thus, if a claim relates back to those stated in the original complaint, the additional allegations will not be barred by the statute of limitations. *Pessotti v. Eagle Mfg. Co.*, 946 F.2d 974 (1st Cir.1991). Accordingly,

if Watkins' additional claim arises from the same conduct, transaction and occurrence as alleged in its previous complaints, Iams will not be able to invoke the protections of the four year statute of limitations for antitrust actions.

■ "The determination and factual inquiries as to whether the elements of Rule 15(c) have been satisfied are made by the district court." *Berndt v. State of Tenn.*, 796 F.2d 879, 883 (6th Cir.1986). When an amended complaint adds a new claim, the court should not focus on the legal theory of the action in resolving whether that complaint should relate back, pursuant to Fed.R.Civ.P. 15(c)(2), to the original complaint. *FDIC v. Jackson*, 133 F.3d 694 (9th Cir.1998). Rather, the district court should analyze the original and amended complaints "to determine whether they share a common core of operative facts sufficient to impart fair notice of the transaction, occurrence, or conduct called into question." *Jackson*, 133 F.3d at 702, quoting *Martell v. Trilogy Ltd.*, 872 F.2d 322, 327 (9th Cir.1989). In particular, the court should consider whether the plaintiff will rely on the same kind of evidence offered in support of the original claim to prove the new claim. *See Percy v. San Francisco Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir.1988); *In re Tower Metal Alloy Co.*, 193 B.R. 266, 272 n. 6 (Bkrtcy.S.D.Ohio 1996)("The test under Rule 15(c) [for] whether a sufficient factual nexus exists to permit relation back is whether 'the evidence with respect to the second set of allegations could have been introduced under the original complaint, liberally construed.' " (citation omitted)); 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.19[2] (Matthew Bender 3d ed.). Furthermore, the court should consider whether the defendant had notice of the claim now being asserted. *E.g., Moore v. Baker*, 989 F.2d 1129 (11th Cir.1993).

■ Watkins' amended claim of exclusive dealing satisfies the requirements of Rule 15(c). Although Watkins adds Hills Science Diet Foods as a "co-monopolizer"

of the specialty pet food market, the allegations against Iams are essentially the same. As with the Second Amended Complaint, Plaintiff asserts that Iams (now along with Hills) has refused to deal with or threatened to refuse to deal with distributors who continue to service Iams' competitors. In both complaints, Plaintiff asserts that Iams has used its one-year distributorship agreement, as well as the amount of time required by the distributor to distribute its products, as a means of coercing distributors into an exclusive relationship. Therefore, Watkins' claim of exclusive dealing, in violation of Section 3 of the Clayton Act, as asserted in the Fourth Amended Complaint, arises from the same conduct, transaction and occurrence as alleged in its previous complaints. Accordingly, that claim relates back to the same claim asserted in its original complaint, and it is not barred by the statute of limitations. Furthermore, unlike the deficient Second Amended Complaint, Plaintiff's Fourth Amended Complaint alleges that the effect of Iams' exclusive distributorship arrangement has been to foreclose competition in a substantial share of the market for premium pet foods sold in specialty stores (¶ 38).[15] Thus, Plaintiff's Fourth Amended Complaint adequately sets forth this cause of action. Defendant's Motion to Dismiss Count Four (Clayton Act: Exclusive Dealing) is Overruled.

## VI. Robinson–Patman Act: Commercial Bribery (Count Five)

Iams requests dismissal of Count Five of the Fourth Amended Complaint, to the extent that it raises a cause of action under the Robinson–Patman Act, because Watkins has not alleged the existence of a brokerage relationship or a fiduciary relationship. Iams argues that Section 2(c) of the Robinson–Patman Act requires either an "illicit brokerage" scenario, or the undermining of the fiduciary relationship between a buyer and its agent, representative, or other intermediary in a transaction involving the sale or purchase of goods. Watkins counters that the Robinson–Patman Act is broad in scope, and that "[a]ny fees paid which represented an unfair discrimination between purchasers or an attempt to bribe a purchaser to prevent it from selling the product of its competitor are a violation of section 2(c)."

As an initial note, Plaintiff states, in paragraph 42 of its Fourth Amended Complaint, that its cause of action for commercial bribery has been brought for violations of 15 U.S.C. § 14. In titling Count Five, however, Plaintiff states that it is a claim for commercial bribery under the Robinson–Patman Act. In addition, both parties have briefed Defendant's Motion to Dismiss Count Five as though it were brought under 15 U.S.C. § 13(c). Accordingly, the Court will address whether Plaintiff has stated a cause of action, in Count Five, under either of these statutes.

### A. Section 2(c) of the Robinson–Patman Act

Section 2(c) provides:
It shall be unlawful for any person engaged in commerce, in the course of such commerce to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

15 U.S.C. § 13(c). In opposing the motion to dismiss, Watkins relies on two Ninth

---

**15.** As with the Second Amended Complaint, the Fourth Amended Complaint alleges the existence of an exclusive dealing arrangement (¶ 34).

Circuit opinions, *FTC v. Washington Fish & Oyster Co.*, 271 F.2d 39 (9th Cir.1959) and *Rangen, Inc. v. Sterling Nelson & Sons*, 351 F.2d 851 (9th Cir.1965), to support its contention that business practices other than price discrimination are illegal under Section 2(c). Those cases do not extend Section 2(c) as far as Watkins argues. As stated more recently by the Ninth Circuit, "Section 2(c) was originally enacted to prohibit price discrimination through rebates described as brokerage. Section 2(c) now has a broader purpose and can be read to prohibit commercial bribery *where a fiduciary relationship exists.*" *Harris v. Duty Free Shoppers Ltd. Partnership*, 940 F.2d 1272, 1274, n. 3 (9th Cir.1991)(emphasis added), *citing Rangen, supra; see Fitch v. Kentucky–Tennessee Light & Power Co.*, 136 F.2d 12 (6th Cir. 1943) (recognizing commercial bribery as a violation of Section 2(c)). Thus, in addition to price discrimination, commercial bribery may now also involve an attempt to "undermine the fiduciary relationship between a buyer and its agent, representative, or other intermediary in a transaction involving the sale or purchase of goods." 1996 WL 903951 *3 (N.D.Ohio 1996); *Harris*, 940 F.2d at 1274; *Stephen Jay Photography, Ltd. v. Olan Mills, Inc.*, 903 F.2d 988, 992 (4th Cir.1990). To state a claim for commercial bribery, the plaintiff must allege the existence of a fiduciary relationship or a brokerage situation.[16] Section 2(c) has not been extended to any fees paid which represented an unfair discrimination between purchasers or to any bribe.

In Count Five, Plaintiff has failed to state a cause of action under Section 2(c). Count Five states, in essence, that Iams gave money, discounts or other items of value to retailers to induce them not to purchase from Watkins the products of one of Iams' competitors, Excel. Plaintiff has not alleged the existence of a fiduciary relationship, nor has Plaintiff alleged facts to support an illicit brokerage scenario.

Accordingly, Watkins has not stated a claim for commercial bribery under Section 2(c), 15 U.S.C. § 13(c).

### B. *Section 3 of the Clayton Act*

█ Section 3 of the Clayton Act provides:

> It shall be unlawful for any person engaged in [interstate] commerce, in the course of such commerce, to ... make a sale or contract for sale of goods ... for use, consumption or resale within the United States ... on the condition, agreement, or understanding that the ... purchaser thereof shall not use or deal in the goods ... of a competitor or competitors of the seller, where the effect of such ... sale ... may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

15 U.S.C. § 14. To prevail on a claim of a violation of this statute, a plaintiff must allege and prove: 1) that the defendant made a sale on the condition that the buyer not deal in the goods of the sellers' competitors; 2) that the contract has the effect of substantially lessening competition in the relevant market; and 3) that the plaintiff was injured in its business or property as a result of the defendant's actions. *Gabriel & Assocs., Inc. v. Invisible Fence Co., Inc.*, Civ. No. H–93–1016, 1993 WL 565997 at *8 (D.Md. Nov.9, 1993). Plaintiff's Fourth Amended Complaint includes allegations of each of the elements.

█ Although Plaintiff alleges factual allegations to support the claim, Watkins lacks standing to bring a cause of action under 15 U.S.C. § 14. In order to assert a claim under Section 3, a plaintiff must allege that "a contract for sale of goods between [defendant] and [plaintiff], not [defendant] and others, was conditioned on a promise of not dealing in the goods of a competitor...." *Central Chem. Corp. v.*

---

**16.** Some circuit courts of appeal impose the additional requirement that a plaintiff allege that the illegal payments in question "crossed the line from buyer to seller or vice versa." *Seaboard Supply Co. v. Congoleum Corp.*, 770 F.2d 367 (3d Cir.1985).

*Agrico Chem. Co.,* 531 F.Supp. 533, 540 (D.Md.1982), *aff'd,* 1985 WL 15439 (4th Cir. Aug. 23, 1985). Watkins has not alleged that a contract between it and Iams was conditioned on a promise of not dealing in a competitor's goods. Rather, Watkins' Complaint alleges that Iams contracted with others, *i.e.* retailers, providing them with inducements not to purchase from Watkins the products of Excel, a competitor of Iams. Thus, based on the allegations in Watkins' Fourth Amended Complaint, Watkins lacks standing to bring a cause of action under Section 3 of the Clayton Act, 15 U.S.C. § 14.

Accordingly, Defendant's Motion to Dismiss Count Five (Commercial Bribery), to the extent it is brought under the Robinson–Patman Act, is Sustained. Because Plaintiff lacks standing to bring a claim under Section 3 of the Clayton Act, Count Five is dismissed in its entirety.

### VII. *Count Six (Illegal Tying Arrangement)*

Iams requests that the Court dismiss or strike Count Six of the Fourth Amended Complaint, alleging illegal tying and attempt to monopolize in violation of sections 1 and 2 of the Sherman Act, because such a claim has already been dismissed from this litigation. Watkins did not respond to Iams' argument.

In its expanded opinion of March 27, 1998 (Doc. # 67), this Court explained that it dismissed Plaintiff's claim of illegal tying, because Watkins had failed to allege that Iams forced it to purchase a tied product as a condition of being furnished a tying product. The Court dismissed Watkins' claim for an attempt to monopolize, because Plaintiff had failed to allege a dangerous probability of successful monopolization. Count Six of Plaintiff's Fourth Amended Complaint is identical to Count Five of its Second Amended Complaint. Therefore, for the reasons set forth in the Court's expanded opinion (Doc. # 67), Count Six of Plaintiff's Fourth Amended Complaint is dismissed and those allega-

tions are stricken. Defendant's Motion as to Count Six is Sustained.

For the foregoing reasons, Defendant's Motion to Dismiss or Strike is Sustained in Part and Overruled in Part. Defendant's Motion to Dismiss is sustained as to Counts One, Five, and Six. To the extent that Plaintiff has attempted to raise a claim for conspiracy to fix prices or a claim under Section 2(a), Defendant's Motion to Dismiss a portion of Count Three is also Sustained. The references in Count One to Watkins as a franchisee and to the MFIL, and all of Count Six are hereby stricken from the Fourth Amended Complaint. Defendant's Motion is overruled as to Count Four.