**CENTERVILLE ALF, INC.,
et al., Plaintiffs,**

v.

**BALANCED CARE CORP., Defendant.**

Case No. C–3–01–233.

United States District Court,
S.D. Ohio,
Western Division.

March 18, 2002.

P. Brian See, Keith Shumate, Columbus, OH, for Plaintiffs.

Marc Blubaugh, Columbus, OH, for Defendant.

## DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P. 12(B)(3) AND (7) (DOC. # 5–1), ITS MOTION TO SEVER (DOC. # 5–2), AND ITS MOTION TO TRANSFER (DOC. # 5–3)

RICE, Chief Judge.

The instant litigation arises out three alleged breaches of contract by Defendant Balanced Care Corporation ("BCC"), in which BCC failed to fund the outstanding lease obligations of three tenants to their respective landlords. Plaintiffs Centerville ALF, Inc., Medina ALF, Inc., and Shippensburg ALF, Inc., are three landlords, who own three assisted living facilities, two in Ohio (the Centerville and Medina facilities) and one in Pennsylvania (the Shippensburg facility). All Plaintiffs are affiliated with Ocwen Financial Corporation ("Ocwen"). According to their Complaint (Doc. # 1), Plaintiffs entered into leases with tenants, who agreed to operate the facilities as long-term residential care centers. Specifically, on December 31, 1997, Medina ALF entered into a lease agreement with Senior Care Operators of Ohio, LLC. On March 31, 1998, Centerville ALF entered into an identical lease with Senior Care Operators of Centerville, LLC, and Shippensburg ALF entered into an identical lease with Senior Care Operators of Shippensburg, LLC.[1] Each of the leases provided that the lessee would pay "base rent" and "additional rent," as set forth in the lease. The base rent was due on the first day of each month during the term of the lease, and the term was to last for 60 months following the "commencement date."

Each of the Lessees entered into a "Shortfall Agreement" with Defendant,

---

1. Collectively, Senior Care Operators of Ohio, LLC; Senior Care Operators of Centerville, LLC; and Senior Care Operators of Shippensburg, LLC, will be referred to as "Lessees."

whereby BCC agreed to advance money to the Lessees for any operating deficits. None of the Plaintiffs was a party to the Shortfall Agreements. However, as an inducement for the Plaintiffs to enter into leases with their respective Lessees, BCC entered into a "Working Capital Assurance Agreement" (collectively, "Assurance Agreements") with each Plaintiff, in which BCC agreed to ensure the timely payment of all lease obligations. In particular, Defendant agreed that it would advance enough money to the tenants/Lessees to cover any outstanding obligations, upon receiving a written request for payment from the tenant or the landlord.

In December of 2000 and January of 2001, the Lessees each failed to pay any rent to Plaintiffs. Plaintiffs satisfied a portion of the rental obligations for December, January, and February by using available funds from letters of credit and other escrow amounts, as set forth in the leases. However, these amounts were insufficient to satisfy completely the amount of rent due and owing. The Lessees have continued to fail to pay rent. On April 9, 2001, Ocwen, on behalf of Plaintiffs, demanded that BCC advance sufficient money for the payment of all outstanding rent, pursuant to the Assurance Agreements. BCC has refused to advance any monies.

Consequently, on May 31, 2001, Plaintiffs filed the instant lawsuit against BCC, seeking to enforce their Assurance Agreements. The Complaint set forth four claims for relief, to wit: (1) a request for declaratory judgment that BCC must unconditionally fund the outstanding lease obligations, including the requirement to pay rent, and that its failure to do so constitutes a material breach of the Assurance Agreements; (2) a state law claim by the Medina Plaintiff for breach of contract; (3) a state law claim by the Centerville Plaintiff for breach of contract; and (4) a state law claim by the Shippensburg Plaintiff for breach of contract.

Pending before the Court are Defendant's Motion to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(3) and (7) (Doc. # 5–1), its Motion to Sever (Doc. # 5–2), and its Motion to Transfer (Doc. # 5–3). As a means of analysis, the Court will first evaluate whether the Lessees are indispensable parties which cannot be joined, thus requiring dismissal, pursuant to Fed.R.Civ.P. 12(b)(7). If the Court concludes dismissal is not appropriate under Rule 12(b)(7), it will then turn to whether venue is proper in this district. If necessary, the Court will subsequently address together Defendant's Motions to Sever and to Transfer. For the reasons assigned, each of Defendant's Motions is OVERRULED.

## I. *Rule 12(b)(7): Necessary Parties*

In its Motion to Dismiss, BCC argues that this litigation cannot proceed in this Court, because the Lessees are necessary and indispensable parties to the action. In determining whether an action should be dismissed for failure to join an indispensable party, pursuant to Fed.R.Civ.P. 12(b)(7), the Court employs a three-step process. Fed.R.Civ.P. 19; *Local 670 v. International Union, United Rubber, Cork, Linoleum and Plastic Workers of America*, 822 F.2d 613, 618 (6th Cir.1987), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988). *First*, the court must determine whether an absent party is necessary to the resolution of the litigation and should be joined if possible. Fed. R.Civ.P. 19(a). If the absent party is not "necessary," no further inquiry is required. *Second*, if the court concludes that the absent party is "necessary," the court must then determine whether the party is subject to the court's jurisdiction and, thus, can be joined. If personal jurisdiction exists and venue is proper, the absent

party *must* be joined. *Id.; Keweenaw Bay Indian Community v. State of Mich.*, 11 F.3d 1341, 1345–46 (6th Cir.1993). If the court lacks jurisdiction over the absent party, the court proceeds to the *third* step, *i.e.*, it must determine whether it may proceed without that party or, conversely, must dismiss the case due to the party's indispensability. Fed.R.Civ.P. 19(b).

### A. Are the Lessees Necessary Parties?

 Rule 19(a) sets forth the criteria for determining whether a party is necessary to the litigation. It states, in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). Defendant asserts that the Lessees are necessary to this action, because complete relief cannot be accorded in their absence. Specifically, BCC asserts that it has a contractual obligation under the Assurance Agreements to loan funds to the Lessees, not to make direct payment to Plaintiffs. Thus, it argues, the Court can only require BBC to pay funds to the Lessees, not directly to Plaintiffs. In addition, Defendant argues that the Lessees have an interest in the litigation, because a judgment in Plaintiffs' favor would require a finding that the Les-

sees have breached their respective contractual obligations.

### 1. Complete Relief Cannot be Accorded

In support of its argument that complete relief cannot be accorded without the Lessees, Defendant principally relies upon *Video Towne, Inc. v. RB–3 Associates*, 125 F.R.D. 457 (S.D.Ohio 1988) (Rice, J.), and *Shoop v. Paramount Productions, Inc.*, 84 F.R.D. 90 (M.D.Pa.1979). In *Video Towne*, the plaintiff, a lessee, alleged that its landlord had breached its lease agreement, and that said breach was induced by the plaintiff's chief competitor, in whose favor the lease was terminated. The plaintiff sought to amend its Complaint, adding its competitor as a party-defendant. The plaintiff argued that the action would settle the rights to the property and, thus, its competitor, as the holder of the subsequent, competing lease, was an indispensable party. The Court began by noting that Plaintiff's allegations were in the nature of a claim for tortious interference with contractual relations. It further noted that if the plaintiff's action for breach of contract were to proceed in the Court, it could separately maintain an action for tortious interference with contractual relations against its competitor, the proposed additional defendant. However, the Court reasoned that the competitor was indispensable, because the plaintiff had not sought damages but, rather, specific performance of the lease. It stated that specific performance on a lease will not be awarded when the property owner has entered into a subsequent lease with a third party who had no notice of the prior lease agreement. Thus, the competitor's knowledge of the prior lease would be a critical issue before the Court, and a determination thereon would act as collateral estoppel in a subsequent action for tortious interference with contractual relations, which could potentially prejudice the ab-

sent proposed defendant. Thus, the Court concluded that the competitor was a necessary and indispensable party.

Unlike the plaintiff in *Video Towne,* Plaintiffs herein have not sought specific performance from either BCC or the Lessees. In other words, Plaintiffs have not requested that the Court order BCC to advance money to the Lessees, so that such funds can be paid by the Lessees to them. Rather, they have sought only a declaratory judgment that BCC has breached its agreement and damages. Although Defendant was required only to loan money to the Lessees, not to pay the Landlords directly, Plaintiffs can obtain a declaratory judgment that Defendant was required to issue funds to the Lessees without prejudicing the absent Lessees. Moreover, Plaintiffs can seek damages from Defendant, provided that they can establish that they would have received the rent payments from the Lessees had Defendant complied with the Assurance Agreements. The Court need not order the Lessees to pay their overdue rent in order to accord Plaintiffs relief. Accordingly, to award Plaintiffs damages due to BCC's alleged breach of the Assurance Agreements, the Lessees are unnecessary.

Likewise, the district court's decision in *Shoop, supra,* does not provide a basis for concluding that the Lessees herein are necessary. In *Shoop,* the lessor of film brought suit against the lessee, alleging that the lessee had failed to pay rental fees or to return the film. The lessee sought dismissal of the action, arguing, *inter alia,* that Mr. Joseph A. DeSantis, Jr., was a necessary party. The Court agreed that Mr. DeSantis must be joined, noting that he was a signatory to and a named party in the contract, and that the contract obligated him to return the film. Thus, the Court concluded that Mr. DeSantis was necessary for there to be a "just adjudication" of the action.

As with *Video Towne, Shoop* is likewise distinguishable. The Lessees are not signatories to the Assurance Agreements at issue. To the contrary, each of the Assurance Agreements indicate that BCC's obligations flow directly to Plaintiffs. For example, the Assurance Agreements state: "Lessor shall have the right to directly request from BCC any advance needed to satisfy such Shortfalls, and upon such request the same shall be funded by BCC." (Compl. Ex. B ¶ 1(a)). They further provide that working capital loans will be made "within three (3) days after demand by Lessor or Lessee." (*Id.*) In addition, BCC agreed in the contracts that "it is expressly intended by BCC that the covenants and agreements by BCC hereunder may be relied upon and enforced by the Lessor." (*Id.*) Moreover, "the obligations of BCC contained herein are absolute and unconditional obligations to Lessor, and no provision herein or any other agreement to which BCC is a party (including without limitation the Shortfall Agreement) shall be construed to the contrary." (*Id.* ¶ 1(b)). Thus, there is no indication that the Assurance Agreements oblige the Lessees to carry out any obligations therein. Accordingly, the Court finds no basis to conclude that the Lessees are necessary in order for complete relief to be granted to Plaintiffs.

### 2. *Lessees Claim an Interest in the Litigation*

BCC asserts that the Lessees are necessary parties to this action, because they claim an interest in the litigation, and their absence will impede their ability to protect that interest and will leave BCC subject to a substantial risk of incurring inconsistent obligations. In particular, BCC asserts that a finding for Plaintiffs on the merits will require a prior finding that the Lessees breached their leases.

The Court disagrees with Defendant that the issue of non-payment of rent is central to the resolution of this litigation. *First*, the Assurance Agreements indicate that BCC was obligated to provide working capital loans, regardless of whether the lessee was in default. Paragraph 1(a) provides, in pertinent part:

> BCC unconditionally agrees to loan to the Lessee sufficient funds, by means of working capital loans (collectively, the "Working Capital Loans"), to pay and satisfy the amount by which the Lessee's cash requirements to meet its obligations (including, without limitation, operating expenses, debt service and the obligations of Lessee under the Lease) due and payable during any month exceed the gross revenues received by the Lessee during such month (the "Shortfall"). Working Capital Loans from BCC to Lessee shall be made *without regard to any default, breach of condition, bankruptcy of Lessee or failure to satisfy any condition or obligation under the Shortfall Agreement.* BCC shall, without further direction, advance to the Lessee in the form of Working Capital Loans so that the Lessee is able to meet all of its working capital obligations . . . when due.

*Id.* (emphasis added). Thus, the Assurance Agreements do not indicate that the Lessees must be in default of their Lease obligations in order for the Lessors (*i.e.*, Plaintiffs) to request that working capital loans be made by BCC to the Lessees.

In addition, even if the factual question of the Lessee's default were central to this litigation, any findings in that regard would not be binding on the Lessees. It is well-established that a guarantor is not in privity with a debtor. *E.g., Woodward v. Moore*, 13 Ohio St. 136 (1862). Therefore, a finding that a guarantor, such as BCC, is obligated to satisfy the debt of the principal (*i.e.*, the Lessees) would not collaterally estop the Lessees from asserting that they had not defaulted on the Leases. *National City Bank v. The Plechaty Cos.*, 104 Ohio App.3d 109, 115, 661 N.E.2d 227, 230 (1995). Thus, even though the Lessees may have an interest in this litigation, should Plaintiffs establish that they defaulted on their rent payments, the Lessees' ability to protect that interest would not be impaired, because the Lessees would not collaterally estopped from relitigating that issue. Accordingly, the Court concludes that the Lessees will not be prejudiced by the continuation of this action in their absence.

### 3. *Defendant may be Subject to Inconsistent Obligations*

BBC argues that it may be subject to inconsistent verdicts, in the event that the Lessees are excluded from this litigation. It asserts that this Court could find that the Lessees had failed to pay rent of a specific amount, whereas in a subsequent action by BCC against the Lessees, a court could find that the Lessees did not fail to pay rent or did not fail to pay rent in the same amount (Doc. # 5 at 7).

In *Balcom v. Rosenthal & Co.*, 1998 WL 2835 (N.D.Ill. Jan. 2, 1998), the district court addressed such an issue, and held that this situation does not warrant concluding that the absent party was necessary:

> As noted, such success [by plaintiff] would probably require a factual finding that Hillier [an employee of defendants] was not authorized to transfer the funds. Although the court does not address the merits of such an action, defendants might in turn seek reimbursement for any liability arising from this judgment through a suit against Hillier under fraud or implied indemnity. As Hillier was not a party to the first action, she would not be bound by its findings. Thus, in contradiction to Balcom's suit

against the defendants, the trier of fact may find that Hillier was authorized to transfer the funds. Although this may appear unfair to the defendants, Rule 19(a) protects against inconsistent obligations, not inconsistent results.

*Id.* at *5. Judge Porter expressed similar reasoning in *Bedel v. Thompson,* 103 F.R.D. 78 (S.D.Ohio 1984).

Defendant also maintains that D.H. Baldwin is a "person to be joined if feasible" under subpart (a)(2) of Rule 19 in that the absence of the Company will lead to a substantial risk of the defendant Jones & Co. being subject to inconsistent obligations. Specifically, Jones contends that if it is found liable here and subsequently brings an adversary proceeding against D.H. Baldwin for indemnification or contribution in the Bankruptcy Court, the debtor, not being a party here, will not be bound by principles of res judicata. The argument continues that if the bankruptcy court were to find no liability on the part of Baldwin, defendant Jones & Co. would be victimized by two inconsistent judgments, thereby owing plaintiffs in this action damages while having no enforceable right of contribution or indemnification against D.H. Baldwin.

While having some surface appeal, this argument misstates the actual effect of the two hypothetical judgments. A finding of liability in this action coupled with a determination by the Bankruptcy Court of no entitlement to contribution or indemnification would subject defendant Jones & Co. to but one judgment "obligation." Obviously defendant would be obliged to pay any judgment rendered against it in this action. However, a determination in the Bankruptcy Court of no liability on the part of D.H. Baldwin would impose no "obligation" on the defendant, but rather would be an adjudication concerning the obligations of D.H. Baldwin. Even though the re-

sults of the above scenario may be, to a certain extent, logically inconsistent, Rule 19 does not speak of inconsistent "results." Rather, it speaks in terms of inconsistent "obligations." As pointed out, defendant's scenario does not result in subjecting the defendant to inconsistent obligations, but instead imposes the consequences of inconsistent results.

That the inquiry in these situations is directed to inconsistent obligations and not inconsistent results is due to the nature of joint and several liability. A plaintiff is under no requirement to join all parties who might be jointly and severally liable. Thus, anytime a plaintiff does not join all possible defendants alleged to be jointly and severally liable, those parties who are joined suffer the risk of an inconsistent judgment result in a subsequent action for contribution or indemnification. Such is the nature of joint and several liability and such is the case here. Hence, "to dismiss the action on the ground that [D.H. Baldwin] is indispensable would ... deny a principal aspect of several liability."

Defendants' apprehension about defending this action without the presence of the Company whose securities were marketed is understandable. Admittedly it is within the realm of possibility that they could suffer the consequences of logically inconsistent judgments. The burden of this possibility cannot, however, operate to deprive plaintiffs of their day in court. Hence D.H. Baldwin cannot be considered a "person to be joined if feasible" under Rule 19(c). Thus defendant's motion to dismiss must be denied.

103 F.R.D. at 81 (citations omitted).

Although the Court recognizes that a suit by BCC against the Lessees for indemnification could result in a finding that the Lessees did not fail to pay rent at all

or in the same amount as alleged herein, BCC would not be faced with inconsistent *obligations*. A verdict in a subsequent action between BCC and the Lessees would not result in a requirement that BCC pay a different amount to *Plaintiffs*. *See also Alton Ochsner Medical Foundation v. HLM Design of North America, Inc.*, 2001 WL 1204054 (E.D.La. Oct. 10, 2001). In other words, although BCC faces the risk of inconsistent results, it is not faced with the risk of inconsistent obligations to Plaintiffs.

Accordingly, the Court concludes that the Lessees are not necessary parties to this litigation. Defendant's Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(7), is OVERRULED.

## II. *Rule 12(b)(3): Improper Venue*

■■■ Defendant asserts that venue is improper, with regard to claims by the Shippenburg and Medina Plaintiffs, because the Court lacks personal jurisdiction over it for those claims, as required by § 1391(a)(1). Plaintiffs bear the burden of establishing that venue is proper once an objection to venue has been raised, and must demonstrate that venue is proper for each claim asserted in their complaint. *Astor Holdings, Inc. v. Roski*, 2002 WL 72936, *8 (S.D.N.Y. Jan.17, 2002); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3808. Discretion resides with the district court to choose the appropriate procedure for deciding a motion to dismiss for improper venue. *McCracken v. Auto. Club of Southern Cal.*, 891 F.Supp. 559, 560–61 (D.Kan.1995)(stating court has discretion to choose the appropriate procedure for motions to dismiss for lack of personal jurisdiction and for improper venue); *see Michigan Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir.1989)(personal jurisdiction); *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989)(same). The court can deter-

mine the motion on the basis of affidavits alone or by conducting an evidentiary hearing. *See Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989); *McCracken*, 891 F.Supp. at 561. Furthermore, the court may permit discovery to aid it in deciding the motion, whether based on affidavits, *see International Techs. Consult., Inc. v. Euroglas*, 107 F.3d 386 (6th Cir.1997)(plaintiff was ordered to respond to motion challenging personal jurisdiction after completion of discovery on jurisdictional issues; no evidentiary hearing held), or by conducting an evidentiary hearing, *Serras*, 875 F.2d at 1214 (court may "order discovery of a scope broad enough to prepare the parties for [the evidentiary] hearing"). The Court may consider evidence without turning the motion into one for summary judgment. If the court determines that the motion can be decided without a hearing, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). If the plaintiff presents a *prima facie* case that venue is proper, after reading the pleadings and the affidavit(s) so construed, the defendant's motion will be denied, notwithstanding contrary allegations made by the defendant. *Serras*, 875 F.2d at 1214.

The general venue provision is set forth in 28 U.S.C. § 1391, which provides, in pertinent part:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a

judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

"[T]he purpose of Section 1391 is to ensure that the plaintiff does not select a venue that is unfair or inconvenient to the defendant." *United Liberty Life Ins. Co. v. Pinnacle West Capital Corp.*, 149 F.R.D. 558, 562 (S.D.Ohio 1993).

At the outset, the Court notes that Defendant, a corporation, has not brought a Motion to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(2), for want of personal jurisdiction. In other words, Defendant has not argued outright that this Court should dismiss for lack of personal jurisdiction over it, with regard to the Shippensburg and Medina Plaintiffs' claims. Rather, Defendant argues that *venue* is improper, because it does not reside (*i.e.*, is not subject to personal jurisdiction) in this district for purposes of those claims.

Defendant's approach is not synonymous with a Rule 12(b)(2) Motion. Personal jurisdiction "represents a restriction on judicial power ... as a matter of individual liberty." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). In contrast, "[t]he purpose of the [venue] rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir.1974). As stated by the Federal Circuit:

> Venue, which connotes locality, serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred. 1A(2) J. Moore, W. Taggart, A. Vestal, J. Wicker & B. Ringle, Moore's Federal Practice ¶ 0.340 (2d ed.1990). The venue statutes achieve this by limiting a plaintiff's choice of forum to only certain courts from among all those which might otherwise acquire personal jurisdiction over the defendant.

*VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1576 (Fed.Cir. 1990).

With both personal jurisdiction and venue, a party may insist that the limitation be observed, or he may forgo that right, effectively consenting to the court's exercise of adjudicatory authority. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); *see* Fed.R.Civ.P. 12(h)(1). Challenges to personal jurisdiction and to venue must be raised separately, and failure to raise challenges results in waiver of the defenses. Fed.R.Civ.P. 12(h)(1). As separate defenses, waiver of a personal jurisdiction defense does not automatically constitute a waiver regarding venue. *Id.* For example, in *Half Price Books, Records, Magazines, Inc. v. Riepe*, 1998 WL 329383 (N.D.Tex. June 12, 1998), the district court trans-

ferred the action against an individual defendant, even though it had personal jurisdiction over him, because that individual did not reside in Texas and none of the events giving rise to the dispute arose in that state. However, in the case of a corporate defendant, the residence of the defendant incorporates the test for personal jurisdiction. In other words, if a corporate defendant is subject to personal jurisdiction in a judicial district, it is deemed to reside there for purposes of venue.

A number of courts have held that venue is proper in that district when the corporate defendant had failed to challenge the court's exercise of personal jurisdiction. For example, in *Computer Express Internat'l, Ltd. v. Micronpc,* Inc, 2001 WL 1776162 (E.D.N.Y. Dec. 21, 2001), the plaintiffs, a New York corporation and a New Jersey corporation which had entered into a joint venture, brought suit against the defendant (Micron), an Idaho corporation, for breach of an agreement to sell them certain computer systems. The defendant sought dismissal for improper venue, arguing that it is "without any applicable contacts with the State of New York that would render venue proper in Plaintiff's [sic] selected forum." The defendant did not seek dismissal for want of personal jurisdiction. Addressing Micron's venue argument, the Court noted that, as the sole defendant in a diversity action, § 1391(a)(1) applied. In light of § 1391(c), the court held that venue was proper, reasoning: "Under Section 1391(c), Micron resides in any district in which it is subject to personal jurisdiction. By failing to move to dismiss for lack of personal jurisdiction, however, Micron has conceded that it is subject to personal jurisdiction in this district." Because the court had personal jurisdiction over the defendant, venue was also proper. *Id.; see Granger & Assoc., Inc. v. Marion Steel Co.,* 2001 WL 15632 (S.D.Ohio Jan. 4, 2001) (in determining whether action could have been brought in

New Jersey, the fact that the sole defendant, a corporation, had not contested that it was subject to personal jurisdiction in New Jersey rendered venue proper therein).

Herein, BCC has failed to challenge this Court's exercise of personal jurisdiction over it, pursuant to Fed.R.Civ.P. 12(b)(2). Because BCC has failed to raise such a challenge, it has waived that argument, pursuant to Fed.R.Civ.P. 12(h). Accordingly, even though BCC has asserted that its contacts with the Southern District of Ohio, with regard to the Media and Shippensburg Plaintiffs, are insufficient to render venue proper for those claims, those arguments are immaterial. It would defy logic to deem BCC subject to this Court's personal jurisdiction, due to waiver, yet dismiss the Shippensburg and Medina Plaintiffs' claims against it for improper venue, due to lack of residency or, in other words, for want of personal jurisdiction. Having conceded that this Court has personal jurisdiction over it for each Plaintiff's claims, by virtue of its failure to raise a 12(b)(2) defense, Defendant is deemed to reside in the Southern District of Ohio for purposes of venue. 28 U.S.C. § 1391(c). Accordingly, Defendant's Motion to Dismiss for improper venue, pursuant to Fed. R.Civ.P. 12(b)(3), is OVERRULED.

III. *Defendant's Motion, in the Alternative, to Transfer Venue, Pursuant to 28 U.S.C. § 1404 (Doc. # 5–3) and its Motion to Sever (Doc. # 5–2)*

Defendant has requested, in the alternative, that this Court sever the instant action into three lawsuits and to transfer (1) the Medina action to the Northern District of Ohio and (2) the Shippensburg action to Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1404. Section 1404(a) provides that "[f]or the convenience of parties and wit-

nesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 42 U.S.C. § 1404(a). "In ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including witnesses, as well as other public interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.), quoting *Stewart Org'n Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), *cert. denied*, 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). Although there is no definitive list of factors that must be considered in determining whether a change of venue is warranted,[2] the district court may consider a number of case-specific factors, including but not limited to: 1) the nature of the suit; 2) the place of the events involved; 3) the relative ease of access to sources of proof; 4) the nature and materiality of testimony to be elicited from witnesses who must be transported; 5) the respective courts' familiarity with the applicable law and the conditions of their dockets; and 6) the residences of the parties. *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F.Supp. 1316, 1318 (S.D.Ohio 1991) (Holschuh, J.); *Central States, Southeast & Southwest Areas Pension Fund v. Lewis & Michael, Inc.*, 992 F.Supp. 1046, 1047–48 (N.D.Ill.1998) (A party seeking transfer must show that venue is appropriate in both the transferor and transferee courts, that transfer will serve the convenience of the parties and witnesses, and that transfer will promote the interests of justice.); *see International Car Show Ass'n v. ASCAP*, 806 F.Supp. 1308, 1310 (E.D.Mich.1992)(The court must consider a number of case-specific factors, including:

"the relative ease of access to sources of proof; the availability of process to compel attendance of unwilling witnesses; the cost of obtaining willing witnesses; [and] the practical problems associated with trying the case most expeditiously and inexpensively. In short, the Court may consider any factor that may make any eventual trial easy, expeditious, and inexpensive."). The inconvenience of the chosen and proposed forums must be balanced to see which party would suffer the greater hardship if a change of venue is granted. The moving party bears the burden of proving that a venue change is appropriate. *United States v. Northrop Corp.*, 811 F.Supp. 330, 332 (S.D.Ohio 1992)(Speigel, J.); *Midwest Motor*, 761 F.Supp. at 1318. A motion for change of venue is properly granted when the balance weighs "strongly in favor of transfer." *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir.1951); accord *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971).

In its Motion, Defendant presents virtually the same arguments for both the Shippenburg and the Medina Plaintiffs' claims. With regard to the private factors, BCC asserts that the lawsuit will necessarily involve an inquiry into the performance of the Lessees and the Plaintiffs. Defendant further contends that the relevant documents and the individuals who are knowledgeable about the performance of the parties are located in Shippensburg and Medina, respectively. With regard to the Shippensburg Plaintiff's claim, BCC asserts that it is unable to compel witnesses located in Cumberland County, Pennsylvania, to attend any trial in the Southern District of Ohio. Turning the public factors, Defendant states that this lawsuit is brought by three Florida corporations (the

---

**2.** *See* 17 James Wm. Moore et al., Moore's Federal Practice ¶ 111.13[1][b](listing fourteen factors that courts have considered in determining whether transfer is appropriate).

Plaintiffs) against a Pennsylvania corporation (BCC) regarding property located in Shippensburg and Medina. Thus, the Pennsylvania court has an interest in resolving the Shippensburg dispute, and the Northern District of Ohio has an interest in determining the action regarding the Medina facility.

### 1. Plaintiffs' Choice of Forum

 Under the traditional § 1404 analysis, the Plaintiff's choice of forum should be given substantial weight. *West American Ins. Co. v. Potts*, 1990 WL 104034, *2, 908 F.2d 974 (6th Cir.1990)(Although not dispositive, foremost consideration must be given to the plaintiff's choice of forum). This factor, therefore, favors the Plaintiffs.

### 2. Location of witnesses and documents

There is no question that "factors to be considered in ruling upon a *forum non conveniens* motion should include the availability of compulsory process to obtain the attendance of unwilling witnesses, and the costs of obtaining attendance of willing witnesses." *Mead Data Cent., Inc. v. West Pub. Co.*, 679 F.Supp. 1455, 1466 (S.D.Ohio 1987)(Rice, J.), quoting *AMF, Inc. v. Computer Automation, Inc.*, 532 F.Supp. 1335, 1341 (S.D.Ohio 1982)(Rice, J.). The convenience of witnesses should also be considered. *Id.*

The Medina and Shippensburg Plaintiffs have not asserted that their witnesses and documents are located in this forum. However, although Defendant has asserted that many potential witness are outside of this Court's compulsory jurisdiction, it has not provided evidence that it would be unable to obtain the appearance of necessary witnesses. The Court notes that Defendants have the power to compel their employee-witnesses to testify in Dayton. *See Mead*, 679 F.Supp. at 1466. Moreover, BCC has not provided any evidence that it would be unduly burdensome to

transport relevant documents to Dayton for trial. However, it is likely that it is more convenient for the parties' witnesses to litigate near the facilities themselves. Although the Court cannot conclude that the burden of litigating in Dayton is great, this factors favors severance and transfer.

### 3. Where Bulk of Operative Facts Occurred and Public Factors

Defendant asserts that any alleged breaches of the Lease Agreements occurred where the facilities exist, and that any alleged failure by BCC to comply with the terms of the Assurance Agreements occurred at BCC's principal place of business in Pennsylvania. There are no allegations that any acts relative to the Medina and Shippensburg facilities occurred in the Southern District of Ohio. Thus, the Northern District of Ohio would have a greater interest in determining the Medina action than this district. Likewise, the Middle District of Pennsylvania would have an interest in resolving the dispute regarding the facility in its district. Accordingly, this factor weighs in favor of severance and transfer.

### 4. Convenience to the Parties

Defendant argues that it would be more convenient to litigate in three forums, and that the Medina and Shippensburg Plaintiffs will not be prejudiced by litigating in the Northern District of Ohio and the Middle District of Pennsylvania, because they are not located in the Southern District of Ohio. In responding to Defendant's Motion, Plaintiffs emphasize that, by maintaining the action together, they have avoided duplicative litigation. They assert that each Plaintiff has asserted an identical claim regarding identical Assurance Agreements. Moreover, they note that all Plaintiffs are affiliated with Ocwen. Thus, they argue that the convenience of con-

ducting discovery and resolving the legal issues in one action greatly outweighs any harm that BCC would suffer from litigating all of the Plaintiffs' claims in Dayton. In light of the fact that Plaintiffs have sought a declaratory judgment regarding BCC's obligations for three identical contracts and that discovery in this matter will likely overlap, the Court considers this factor to weigh strongly against severance and transfer.

Upon balancing the foregoing factors, the Court does not find Defendant's argument persuasive. This litigation concerns related Plaintiffs who entered into identical contracts with BCC, and they are bringing identical claims for declaratory judgment and for breach of conduct, based on identical conduct by BCC. Plaintiffs have chosen to sue together in this forum. Although many of the facts concerning the Medina and Shippenburg facilities may have occurred at those locations, and the witnesses and documents for the Medina and Shippenburg Plaintiffs' claims likewise reside there, Defendant has not demonstrated that benefits of severing this litigation into three lawsuits and transferring the Shippenburg and Medina claims to the Middle District of Pennsylvania and the Northern District of Ohio, respectively, substantially outweigh the benefits of litigating the three claims together in Dayton. Rather, the Court concludes that judicial economy and fairness is served by litigating the claims together in this Court, in that duplicative discovery will be prevented and common legal issues will be resolved together, decreasing the risk of inconsistent results. Accordingly, Defendant's Motion to Sever (Doc. # 5–2) and its Motion to Transfer, pursuant to 28 U.S.C. § 1404, are both OVERRULED.

For the foregoing reasons, Defendant BCC's Motion to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(3) and 12(b)(7) (Doc. # 5–1) is OVERRULED. Its Motions to Sever (Doc. # 5–2) and to Transfer, pursuant to 28 U.S.C. § 1404(a), are likewise OVERRULED.