**WAUSAU BENEFITS, et al., Plaintiffs,**

v.

**PROGRESSIVE INSURANCE COMPANY, et al., Defendants.**

**No. CIV.A. 2:02–CV–107.**

United States District Court, S.D. Ohio, Eastern Division.

July 9, 2003.

Daran P. Kiefer, Kreiner & Peters Co., Cleveland, OH, for Plaintiffs.

Jeffrey J. Madrzykowski, Ted B. Riley, Manahan, Pietrykowski, Bamman & Delaney, Toledo, OH, Joel S. McPherson, Hyatt Legal Services, Springfield, OH, J. Richard Brown, Office of J. Richard Brown—2, Dublin, OH, Rudy A. Bisciotti, Edward M. Ryder, Mazanec Raskin & Ryder Co. LPA, Columbus, OH, Steven D. Christopher, Findlay, OH, for Defendants.

### *OPINION AND ORDER*

KING, United States Magistrate Judge.

This is an action for a constructive trust and equitable lien to restore assets to the Kohl's Department Stores Employee Benefit Plan (hereinafter "Plan") in connection with benefits paid on behalf of the participant insureds, defendants Carrie and Bradford Miller (hereinafter "the Millers"), for injuries allegedly caused by defendant Driggers' negligence, for which defendant Progressive Insurance Company (hereinafter "Progressive") provided insurance coverage. Plaintiffs also seek subro-

gation directly from defendant Driggers. With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on the various motions of the parties.

## I. Background

Plaintiffs, Wausau Benefits and Kohl's Department Stores (hereinafter collectively "plaintiffs") are fiduciaries/ administrators of the Plan, a self-funded plan allegedly governed by the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*, (hereinafter "ERISA"). *Complaint*, at ¶¶ 1, 7. The Millers are covered by this Plan through Carrie Miller's employment at the Kohl's operations in Findlay, Ohio. *Id.*, at ¶ 8.

On June 1, 2001, the Millers were injured in an accident resulting from defendant Driggers' alleged negligent operation of a motor vehicle. *Id.*, at ¶¶ 5, 10, 25. As a result of this accident, the Millers incurred medical expenses in excess of $735,000. *Affidavit of Carrie Miller*, at ¶ 6, attached as Exhibit A to *Defendants' Reply and Motion for Summary Judgment. See also Complaint*, at ¶ 10. Plaintiffs have paid $486,529.12 of the Millers' medical and hospital expenses. *Id.*, at¶¶ 11–12, 24.

The Millers allege that they remain jointly liable for the amount of medical expenses not paid by the Plan. *Affidavit of Carrie Miller*, at¶ 6. Progressive had issued an insurance policy to defendant Diggers, which provided for a maximum payout of $100,000 per person. *Complaint*, at ¶ 13. *See also Affidavit of Carrie Miller*, at ¶ 8. Two hundred thousand dollars ($200,000) is allegedly being held by defendants Driggers and Progressive in connection with Millers' claims against Driggers. *Complaint*, at ¶ 13; *Affidavit of Carrie Miller*, at ¶ 10.

Plaintiffs allege that, at least a portion of the money held by defendants Driggers

and Progressive relates to the medical and hospital expenses incurred by the Millers. *Complaint*, at ¶ 14. Plaintiffs argue that the Plan contains a subrogation clause which grants plaintiffs a priority interest in these funds. *Id.*, at ¶¶ 15–20, 31–33.

The Plan's subrogation clause provides: When an associate or dependent receives a benefit from the plan:

(A) For an illness; and

(B) Is entitled to recover payment from any party who may be obligated to pay for such Illness; then

We are subrogated to all rights to recover:

(A) Any payments which the associate or dependent or any other person or organization is entitled to on account of such Illness; and

(B) To the extent that we paid a benefit.

The associate or dependent or other person receiving such payment from us shall:

(A) Sign and deliver all necessary papers;

(B) Do whatever else is necessary to protect our rights; and

(C) Shall not do anything before or after our payment which would prejudice our rights.

Our rights of full recovery may be from a third party, any liability or other insurance covering a third party, the associate's or dependent's own uninsured motorist insurance, underinsured motorist insurance, any medical payments, no-fault insurance or school insurance coverages that are paid or payable.

Our right to subrogate will apply even if the associate or dependent has not been made whole for the loss. Our right of subrogation shall be, in first priority, to the extent of any and all benefits paid. We will not pay fees or costs associated with any claim/lawsuit without express

written consent. We reserve the right to independently pursue and recover paid benefits.

*Plan*, at p. 37, attached as Exhibit 1 to *Plaintiffs' Motion for a Determination of the Subrogation Priority of the Plaintiffs.*

For their part, the Millers argue that the money held by defendants Driggers and Progressive is insufficient to cover the medical expenses not paid by the Plan. *See Affidavit of Carrie Miller*, at ¶¶ 8–9. Additionally, the Millers allege that, as a result of the accident, Carrie Miller has been rendered totally and permanently disabled, resulting in an estimated $450,000 in lost wages. *Id.*, at ¶¶ 4, 7. The Millers also allege that Bradford Miller has suffered lost wages in the amount of $19,000. *Affidavit of Bradford Miller*, at ¶ 4, attached as Exhibit F to *Defendants' Reply and Motion for Summary Judgment.* The Millers take the position that, because they have not been made whole, they have priority over the funds held by defendants Driggers and Progressive, therefore precluding any recovery by plaintiffs.

## II. Discussion

### A. Plaintiffs' Motion to Strike

■ In a motion for summary judgment filed on November 13, 2002,the Millers argue, *inter alia,* that this Court is without jurisdiction to hear this case and that venue is improper. Plaintiffs moved to strike those portions of the Millers' motion for summary judgment, arguing that these arguments are untimely, *see Preliminary*

*Pretrial Order,* at p. 2 (June 6, 2002), and that the Court has in fact already ruled on those issues. *See Continued Preliminary Pretrial Order* (September 13, 2002).

■ Motions to strike are generally disfavored, and the resolution of such motions is reserved to the sound discretion of the trial court. *Watkins & Son Pet Supplies v. Iams Co.,* 107 F.Supp.2d 883 (S.D.Ohio 1999). Moreover, with regard to subject matter jurisdiction, "[w]henever it appears by suggestion of the parties ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). The defense of lack of subject matter jurisdiction therefore cannot be waived. In the interest of justice, this Court will deny this portion of plaintiffs' motion to strike and will revisit the issue of subject matter jurisdiction.

■ The defense of improper venue, on the other hand, can be waived if not timely asserted. *See* Fed.R.Civ.P. 12(h)(1). *See also Centerville ALF, Inc. v. Balanced Care Corp.,* 197 F.Supp.2d 1039, 1047 (S.D.Ohio 2002). Motions regarding venue were to be filed no later than July 30, 2002. *Preliminary Pretrial Order,* at p. 2 (June 6, 2002). The Millers raised this issue for the first time in their November 13, 2002, motion for summary judgment. Defendants have thereby effectively waived the issue of venue. Therefore, to the extent that plaintiffs seek to strike those portions of the Millers' motion relating to venue, the motion to strike will be granted.[1]

---

1. In any event, the Millers have failed to satisfy their burden of showing either that the proposed transferee court, the District Court for the Northern District of Ohio, is a court where this action could have been originally brought, or that the convenience of the parties and witnesses, and the interest of justice, strongly favor transfer. *See* 28 U.S.C. § 1404(a). While it appears that the District Court for the Northern District of Ohio would be an appropriate venue, the Millers have presented no evidence to support such a conclusion. The only argument presented by them is that "all of the relevant facts and parties to this case are located in the Northern District of Ohio." *Defendants' Reply and Motion for Summary Judgment,* at p. 16. This is insufficient to support a motion to transfer.

## B. Subject Matter Jurisdiction

■■■ Plaintiffs allege that the Plan at issue in this case is governed by ERISA. Questions concerning the construction of ERISA qualified plans arise under the federal common law; federal courts therefore have jurisdiction to consider such claims pursuant to § 1331. *Walbro Corp. v. Amerisure Companies,* 133 F.3d 961, 965–66 (6th Cir.1998). The Millers take the position, however, that plaintiffs have not established that the Plan is ERISA-qualified. In particular, the Millers argue that plaintiffs have failed to comply with 29 U.S.C. §§ 1022(a), 1023(a)(1)(A).[2]

■■■ An "employee welfare benefit plan" is defined by ERISA as "any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment ...." 29 U.S.C. § 1002(1). The United States Court of Appeals for the Sixth Circuit has developed a three-step factual analysis for determining whether a benefit plan satisfies the statutory definition set out in § 1002(1). *Thompson v. American Home Assurance Co.,* 95 F.3d 429 (6th Cir.1996). *See also Agrawal v. Paul Revere Life Ins. Co.,* 205 F.3d 297, 299–300 (6th Cir.2000). First, a court must apply the Department of Labor "safe harbor" regulations to determine whether the program is exempt from ERISA. *Thompson,* 95 F.3d at 434. Second, a court should determine whether, from the surrounding circumstances, a

reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for obtaining benefits. *Id.,* at 435. Finally, a court should determine whether the employer established or maintained the plan with the intent of providing benefits to its employees. *Id.*

■■■ First, it does not appear that the Plan is exempt under the Department of Labor's "safe harbor" regulations. The Department of Labor regulations provide that the term "employee welfare benefit plan"

> shall not include a group or group-type insurance program offered by an insurer to employees ... under which
> (1)No contributions are made by an employer or employee organization;
> (2)Participation in the program is completely voluntary for employees or members;
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection the·[sic] program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

*Fugarino v. Hartford Life and Accident Ins. Co.,* 969 F.2d 178, 184 (6th Cir.1992),

---

**2.** Section 1022 provides in relevant part, "A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title." 29 U.S.C. § 1022(a). Section 1023 provides in relevant part, "An annual report shall be published with respect to every employee benefit plan .... Such report shall be filed with the Secretary in accordance with section 1024(a) of this title, and shall be made available and furnished to participants in accordance with section 1024(b) of this title." 29 U.S.C. § 1023(a)(1)(A).

*cert. denied,* 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993)(citing 29 C.F.R. § 2510.3–1(j) (1987)). A plan will be exempt from ERISA coverage only when all four of the "safe harbor" criteria are satisfied. *Id.*

 Both the first and the third criteria are lacking in this case. By express declaration, contributions to the Plan are made by both the participant and the employer. *Plan,* at p. 6. The third criterion requires that the employer not endorse the program and, "according to the Department of Labor, 'employer neutrality is the key to the rationale for not treating such a program ... as an employee benefit plan....'" *Thompson, supra,* 95 F.3d at 436 (citing 40 Fed.Reg. 34,526 (1975)). Where the employer is named as the plan administrator, a finding of endorsement may be appropriate. *Id.* In this case, the Plan specifically refers to Kohl's Department Stores, the employer, as the Plan Administrator. *Plan,* at p. 5. Thus, the Plan is not exempt from ERISA coverage by operation of the Department of Labor's "safe harbor" regulations.

The second *Thompson* factor for determining whether a benefit plan meets the ERISA definition is also satisfied in this case. The Plan is described as a "welfare" plan and includes health and medical benefits. *Id.,* at pp. 6, 15–33. The class of beneficiaries includes regular full-time associates working at least 36 hours per week after 60 days of continuous service and their dependents. *Id.,* at pp. 4, 11–12. The Plan is financed by contributions from both participants and the employer. *Id.,* at p. 6. In order to receive benefits, a participant must send to Wausau written proof of the nature and extent of the expenses. *Id.,* at p. 9. Thus, a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of

financing, and the procedures for receiving benefits. *See Thompson,* 95 F.3d at 435.

The final factor under *Thompson* "requires an initial showing that the employer established a plan meeting the definition of an 'employee benefit plan' and a showing that the employer established the plan with the intent of providing welfare benefits to the employees." *Agrawal,* 205 F.3d at 300. This factor closely tracks the statutory language of § 1002(1). Kohl's undeniably established or maintained its welfare benefit plan for the purpose of providing benefits to its employees. *See Plan,* at pp. 4–14. This Court therefore concludes that the Plan at issue in this case meets ERISA's definition of "employee welfare benefit plan" and is governed by ERISA.

 The Millers also argue that they never received a copy of the Plan and that the requirements of § 1022(a) have therefore not been met. While plaintiffs may be subject to liability for failing to comply with specific provisions of ERISA, *i.e.,* §§ 1022(a)(1), 1023(a)(1)(A), such noncompliance does not necessarily disqualify the plan under ERISA. *See* 29 U.S.C. § 1132(c).

In sum, this Court concludes that the Plan is ERISA-qualified and that this Court is vested with subject matter jurisdiction over the claims asserted herein pursuant to § 1331. *See Walbro Corp.,* 133 F.3d at 965–66.

**C. Remaining Motions**

In a motion filed October 15, 2002, plaintiffs seek a determination of their subrogation priority rights under the Plan. In their motion for summary judgment filed November 13, 2002, the Millers seek to defeat plaintiffs' claim of priority by operation of several equitable defenses.[3]

---

**3.** Specifically, the Millers argued that (1) this Court lacks subject matter jurisdiction, (2)

venue is improper, (3) the make-whole and

■ Plaintiffs argue that the subrogation clause in the Plan grants to plaintiffs a priority claim superior to any that the Millers could assert with regard to funds held by defendants Driggers and Progressive. Plaintiffs seek to impose a constructive trust on those funds. The Millers argue in response that the Plan's subrogation clause does not apply to the particular facts in this case, and that the "make-whole" and "common-fund" doctrines, as well as other equitable doctrines, apply to defeat plaintiffs' priority. The fact that the Plan is governed by ERISA, as was discussed *supra*, influences. whether the equitable defenses raised by defendants are cognizable. "One of the primary purposes of ERISA is to ensure the integrity and primacy of the written plans." *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir.1997). Therefore, federal courts may not apply common law theories to alter the express terms of written benefit plans. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Smith v. Wal–Mart Associates Group Health Plan*, (unpublished) 2000 WL 1909387 (6th Cir. Dec. 27, 2000).

### 1. Applicability of Subrogation Clause

■ First, the Millers argue that the Plan's subrogation clause applies only when an associate or dependent receives a benefit from the plan due to an "illness." *See Plan*, at p. 37. The Millers argue that, in this case, they suffered—not an "illness"—but instead an "injury." This argument is without merit because the Plan specifically defines "illness" to include "[a]ccidental bodily injury, sickness, or disease including pregnancy." *Plan*, at p. 52.

### 2. Make–Whole Defense

■ Next, the Millers argue that, pursuant to the make-whole doctrine, until they are fully compensated for their damages, plaintiffs cannot seek reimbursement or subrogation. The make-whole rule of federal common law "provides that an insurer cannot enforce its subrogation rights unless and until the insured has been made whole by any recovery." *Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir.2000). However, the make-whole doctrine is to be applied only where plan language is ambiguous or silent on a given issue. *See Community Health Plan of Ohio v. Mosser*, (unpublished) 2001 WL 1681127 (S.D.Ohio Aug. 30, 2001). If an ERISA-qualified plan is "specific and clear in establishing both a priority to the funds recovered and a right to any full or partial recovery, the common law make-whole defense has no applicability." *See Copeland Oaks*, 209 F.3d at 813. *See also Hiney Printing Co. v. Brantner*, 243 F.3d 956, 959 (6th Cir.2001).

The subrogation clause in the Plan at issue in this case specifically provides, "Our right to subrogate will apply even if the associate or dependent has not been made whole for the loss. Our right of subrogation shall be, in first priority, to the extent of any and all benefits paid." *Plan*, at p. 37. This clause is unambiguous in providing a subrogation right permitting the Plan to recover even if the associate or dependant is not made whole by any recovery and in granting to the Plan a priority interest in all funds recovered to the extent that the Plan has provided a benefit. This Court concludes, therefore, that the make-whole doctrine offers the Millers no defense to the plaintiffs' claims.[4]

common-fund rules apply to preclude plaintiffs from recovering any amount, (4) in any event, the subrogation clause does not apply because the Millers were not "Ill,"(5) equity precludes relief in this case, and (6) venue should be transferred to the Northern District of Ohio. Arguments 1, 2, and 6 have already been resolved by this Court. *See supra*.

4. In a motion filed November 29, 2002, plaintiffs asked the Court to stay determination of whether or not the Millers were made whole

### 3. Common Fund Defense

■ The Millers also argue that, even if the Plan's subrogation clause does in fact grant plaintiffs a priority interest in any funds in the hands of defendants Driggers and Progressive, plaintiffs' recovery should be reduced to reflect the expenses incurred by the Millers in procuring that recovery. Specifically, the Millers argue that the equitable common fund doctrine should apply in this case.

■ As was mentioned *supra*, the plain language of an ERISA-qualified plan must be given its literal and natural meaning. *Isbell*, 139 F.3d at 1072. However, the United States Court of Appeals for the Sixth Circuit has cautioned: "Equity dictates that the Plan's ability to obtain reimbursement from the Plan participant must be structured so as to take into account the actual amount of the payment the Plan participant received ...." *Smith v. Wal–Mart Associates Group Health Plan*, *supra*, 238 F.3d 424, 2000 WL 1909387, *4. Thus, to the extent possible, a court should take equity into account to complement, not contravene, the express language of the Plan.

In *Smith*, the Plan authorized reimbursement to the Plan for "any payment resulting from a judgment or settlement...." 238 F.3d 424, 2000 WL 1909387, *4. However, the United States Court of Appeals for the Sixth Circuit equitably reduced the Plan's recovery from the participant by an amount equal to the fees charged by the plan participant's lawyer, concluding that such amount had not been "received" by the participant.[5] *Id.* In reaching this conclusion, the Sixth Circuit

also noted that the Plan language did not specifically prohibit this adjustment. *Id.*

Here, however, the Plan expressly provides, "We will not pay fees or costs associated with any claim/lawsuit without express written consent." *Plan*, at p. 37. It does not appear that any such consent was given in this case. The Plan in this case also specifically provides, "We are subrogated to all rights to recover ... [a]ny payments which the associate or dependent *or any other person* or organization is entitled to on account of such Illness...." *Id.* (emphasis added). The Plan's right to recover reimbursement also extends to "a third party, any liability or other insurance covering a third party...." *Id.* Thus, the Plan provides for recovery by the Plan not only of payments to which the participant and any other person is entitled, but also of funds held by a third party such as Driggers and his liability insurance carrier, *i.e.*, Progressive. Therefore, this Court concludes that, because the Plan language is unambiguous in this regard, the common fund defense is unavailable in this case.

### 4. Other Defenses

The Millers also generally argue that their Answer contains various other equitable defenses that should apply in this case. However, the Millers have not specifically addressed any of those defenses and this Court is therefore unable to determine whether any of those equitable defenses apply in this case. The Court therefore declines to consider the applicability of any such equitable defense to this action.

---

pending a determination of whether such a defense applies in this case. In light of this Court's conclusion that the make-whole doctrine does not apply in this case, plaintiffs' motion is now moot.

**5.** The Court of Appeals suggested, however, that the Plan could seek the remainder of its reimbursement from the participant's attorney. *Smith*, 238 F.3d 424, 2000 WL 1909387, *4 (quoting with approval *Ward v. Wal–Mart Stores, Inc.*, 194 F.3d 1315, 1999 WL 801532, at *4 (6th Cir. Sept. 30, 1999)).

990

The Millers also argue that a constructive trust is unavailable as a remedy in this case. However, this argument overlooks the fact that the remedy sought here, in essence specific performance of the Plan's subrogation clause, is an equitable remedy within the scope of § 1132(a)(3)(A). *See Bunting Bearings Corp. v. Miller*, 139 F.Supp.2d 858 (N.D.Ohio 2001). *See also Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 137 n. 12, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).

The Millers cite *FMC Medical Plan v. Owens*, 122 F.3d 1258 (9th Cir.1997), in support of the position that the use of a constructive trust is limited to situations where there is "ill-gotten gain of another's property." *Defendants' Reply and Motion for Summary Judgment*, at p. 22. However, unlike the Plan at issue in this case, the plan in *Owens* did not contain an express subrogation clause. *Owens*, 122 F.3d at 1260. That court's consideration of the remedy of constructive trust is therefore inapplicable to this case.

In any event, other circuits have disagreed with the limitation on the remedy of constructive trust noted in *Owens*. For example, the United States Court of Appeals for the Seventh Circuit held that, "while the Ninth Circuit appears to believe that the imposition of a constructive trust in an ERISA case is permissible only when there has been a breach of trust ... it has given no reason for this belief and there is no basis for it either in ERISA or in the principles of equity." *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 711 (7th Cir.1999). *See also Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1353 (11th Cir. 1998)(the holding in *Owens* is "unduly narrow"). This Court is persuaded in this regard by the reasoning of the Seventh and Eleventh Circuits, and concludes that the relief sought in this action is authorized by § 1132(a)(3).

**WHEREUPON**, the Millers' challenge to this Court's exercise of subject matter jurisdiction is rejected. Plaintiffs' motion to strike the Millers' challenge to venue is **GRANTED**. In any event, the Millers' motion to transfer venue is **DENIED**. Plaintiffs' motion for a determination of subrogation priority is **GRANTED**, and the Millers' motion for summary judgment is **DENIED**. This Court concludes that the Plan in this case is governed by ERISA; that this action was properly instituted under § 1132(a)(3); that the make-whole doctrine, the common fund doctrine, as well as any other equitable remedies contained within the Millers' Answer, do not apply in this action. Plaintiffs therefore have priority over the funds held by defendant Driggers and Progressive.